# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KENNETH LAYTON and DAVID FOSTER, | ] ] ] |
| Plaintiffs, | ] Case No. ] ] |
| vs. | ] ] JURY DEMAND |
| SOUTHERLAND, INC., | ] ] |
| Defendant. | ] |

## COMPLAINT

Plaintiffs Kenneth Layton and David Foster ("Plaintiffs"), by and through counsel, bring this Complaint against Defendant Southerland, Inc. ("Defendant") as follows:

### I.  INTRODUCTION

1. This is an action for harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

2. Plaintiffs were employees of Defendant, a mattress manufacturer, in Nashville. Plaintiffs worked in the same position and were full-time, reliable employees.

3. Plaintiff Kenneth Layton endured sexual harassment at the hands of his direct supervisor, Lauren Snowden.

4. On January 21, 2020, Mr. Layton reported the harassment to Defendant's human resources office via e-mail. Mr. Layton subsequently submitted a formal written complaint against Ms. Snowden.

5. On January 23, 2020, Plaintiff David Foster reported to Defendant's human resources department that he witnessed inappropriate conduct by Ms. Snowden. Mr. Foster subsequently submitted a written witness statement to Defendant's human resources office.

6. Rather than take corrective action and discipline the harasser, Ms. Snowden, Defendant terminated Mr. Layton and Mr. Foster about one month later because they were allegedly "[u]nable to meet Company expectations."

7. Defendant's stated reason for the terminations is pretext; Plaintiffs were both terminated in violation of Title VII.

## II. JURISDICTION & VENUE

8. This Court has jurisdiction of this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

9. The claims asserted in this action arose in Davidson County, Tennessee; therefore, venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)-(c).

10. Plaintiffs' claims are properly pled together pursuant to Federal Rule of Civil Procedure 20(a)(1). Plaintiffs assert the right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law and fact common to all Plaintiffs will arise in the action, as detailed below.

11. At all relevant times, Defendant employed at least 15 individuals.

## III. ADMINISTRATIVE PREREQUISITE

12. Plaintiffs have fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000e, *et seq*. Plaintiffs were each issued a Notice of Right to Sue letter on October 20, 2020, true and correct copies of which are attached hereto as **Exhibit A**.

## IV. PARTIES

13. Plaintiff Kenneth Layton is an adult male individual and citizen of the United States who resides in Hendersonville, Sumner County, Tennessee.

14. Plaintiff David Foster is an adult male individual and citizen of the United States who resides in Old Hickory, Wilson County, Tennessee.

15. At all relevant times, Plaintiffs were employees of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f).

16. Defendant is a domestic for-profit corporation and may be served with process through its registered agent: L. Bryan Smith, 1973 Southerland Drive, Nashville, TN 37207-4423.

## V. FACTUAL ALLEGATIONS

17. Defendant is a mattress manufacturer with facilities in multiple states, including Tennessee.

18. Plaintiffs each worked for Defendant at its Nashville manufacturing facility.

19. As detailed in their individual accounts below, Plaintiffs engaged in protected activity and were both terminated about one month later.

### A. Plaintiff Kenneth Layton

20. Mr. Layton was hired by Defendant in February 2019 as a Quality and Safety Coordinator.

21. Mr. Layton performed his duties well.

22. However, his immediate supervisor, Quality and Safety Manager Lauren Snowden, often pried into his personal life.

23. Ms. Snowden called Mr. Layton outside of work on his cell phone.

24. She would usher Mr. Layton to a different area of the plant to have private conversations with him, which he later discovered was an area void of security cameras.

25. Ms. Snowden veered work-related conversations to sexual topics including asking about "hooking up" or going out partying in downtown Nashville.

26. Ms. Snowden asked Mr. Layton if he liked "white girls" because she found out he has a bi-racial child.

27. Ms. Snowden often physically touched Mr. Layton's arms, back, and sides.

28. Ms. Snowden commented on Mr. Layton's body while caressing him, saying she wished she was "big and strong" like him.

29. Ms. Snowden's harassment was unwelcome and made Mr. Layton very uncomfortable.

30. In or around November 2019, Ms. Snowden alluded to giving Mr. Layton oral sex in her office.

31. On or around December 9, 2019, Ms. Snowden asked Mr. Foster if she was intimidating him or if he thought she was harassing him. Mr. Layton honestly responded that she made him uncomfortable when she touched him and spoke about sexual topics.

32. Ms. Snowden replied that she wished she was his girlfriend so she could "spank" him.

33. The next day, Mr. Layton was written up and suspended for two days for allegedly making negative references about a co-worker, Tracy DeHart.

34. Upon his return, Mr. Layton encountered Ms. Snowden on the plant floor, who turned to him and said, "I thought you broke up with me. Come back to mama."

35. Later, co-worker Antwan Crenshaw complained about Ms. Snowden to Mr. Layton because she was flirting and touching Mr. Crenshaw as well.

36. On January 21, 2020, Mr. Layton e-mailed Defendant's Director of Human Resources, Matt Roberts, to report the sexual harassment. Mr. Layton later submitted a written statement detailing specific instances of harassment he suffered at the hands of Ms. Snowden.

37. Defendant ostensibly began investigating the allegations.

38. About one month later, on February 26, 2020, Mr. Layton was called into a meeting with Mr. Roberts and General Manager Darryl Smith.

39. Mr. Roberts stated the company was parting ways with him and that the company was "going in a different direction."

40. Mr. Layton's Separation Notice states the "Discharge" is "Permanent."

41. Defendant's asserted reason for Mr. Layton's termination is pretext.

### B. Plaintiff David Foster

42. Mr. Foster is a proud veteran of the United States Marine Corps, from which he was honorably discharged as a Lance Corporal in 1996.

43. After his service, he worked for Yamaha Motor Manufacturing Corporation of America for nearly 22 years, where he earned five promotions and was widely regarded as a good worker.

44. After moving to Tennessee with his family, Mr. Foster began working for Defendant as a Quality and Safety Coordinator in June 2019.

45. Mr. Foster performed his duties well and was always a team player.

46. When needed, he performed duties outside of his job description to ensure Defendant's operations ran smoothly.

47. On or about January 23, 2020, Mr. Foster spoke with Mr. Roberts on the phone regarding the sexual harassment investigation of Ms. Snowden.

48. During the call, Mr. Foster confirmed he witnessed inappropriate conduct by Ms. Snowden.

49. Thereafter, Mr. Foster submitted a written witness statement detailing his knowledge of Ms. Snowden's inappropriate workplace behavior.

50. Specifically, Mr. Foster wrote in his statement that he heard Ms. Snowden make sexual comments about a male executive of Englander,[1] an affiliated company of Defendant.

51. Ms. Snowden's comments included, "If he was going to get this, he would have to bring it or I would break him in half," "He couldn't handle this, I would hurt him," and "Anybody that gets this better be able to bring it or I'll break them in half."

52. Mr. Foster also wrote that Ms. Snowden "tends to be handsy when she talks to people. Touching on the back and shoulders."

53. At the time of his statement, Mr. Foster did not know Mr. Layton prompted the investigation into Ms. Snowden because Mr. Layton never discussed his complaint at work.

54. About one month later, on February 26, 2020, Mr. Foster was called into a meeting with Mr. Roberts and Mr. Smith at which time he was terminated.

55. When Mr. Foster asked for a reason, Mr. Roberts replied, "The company is just parting ways and going in a different direction."

56. Mr. Foster's Separation Notice states the "Discharge" is "Permanent."

57. Defendant's asserted reason for Mr. Foster's termination is pretext.

## VI. CAUSES OF ACTION

58. Plaintiffs incorporate herein the facts set out in the foregoing paragraphs. Based on Defendant's actions in those paragraphs, Plaintiffs bring the following causes of action:

### A. Sexual Harassment in Violation of Title VII
### (Mr. Layton against Defendant)

59. By its actions alleged in the forgoing paragraphs, Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

---

[1] Upon information and belief, Ms. Snowden was referring to Englander Chief Executive Officer Mark Kinsley, who had recently visited Defendant's Nashville plant.

6

60. Title VII makes it unlawful for employers to discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

61. Mr. Layton is a member of a protected class (male).

62. Mr. Layton was subjected to frequent sexual advances and physical touching by his direct supervisor, Ms. Snowden.

63. Mr. Layton told Mr. Snowden her harassment made him uncomfortable and was unwelcome.

64. Ms. Snowden's harassment of Mr. Layton was overtly sexual in nature and severe.

65. Mr. Layton's rejection of Ms. Snowden's advances culminated when he told her that she made him uncomfortable.

66. Soon thereafter, Ms. Snowden took the following tangible employment actions against Mr. Layton: (a) gave him written discipline; (b) suspended him from work for two days; and (c) used her prior discipline, and retaliatory bias, to cause and/or strongly influence his unlawful termination.

67. Ms. Snowden had retaliatory animus against Mr. Layton due to his express and implicit rejections of her.

68. Ms. Snowden was a direct supervisor of Mr. Layton and an agent of Defendant.

69. Defendant is legally liable for Ms. Snowden's actions under *respondeat superior* and cat's paw theories of liability.

70. As a direct and proximate result of the actions of Defendant set forth above, Mr. Layton has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish.

71. As a direct and proximate result of such actions, Mr. Layton has been, is being and will be in the future, deprived of income in the form of wages and of prospective benefits owed to the Mr. Layton solely because of Defendant's conduct.

## B. Retaliation in Violation of Title VII
### (Plaintiffs against Defendant)

72. Plaintiffs engaged in protected activity under Title VII by reporting and/or participating in an investigation of workplace sexual harassment. 42 U.S.C. § 2000e-3(a).

73. Plaintiffs' exercise of protected activity was known by Defendant.

74. About one month after Plaintiffs engaged in protected activity, Defendant terminated their employment.

75. Pursuant to Title VII, Plaintiffs were entitled to engage in and assert protected activities and rights without retaliation.

76. A causal link exists between Defendant's decision to terminate Plaintiffs and their engaging in protected activity.

77. Defendant did not terminate Plaintiffs for a legitimate, non-retaliatory reason and any reason given by Defendant would be pretextual in nature.

78. As a direct and proximate result of the actions of Defendant set forth above, Plaintiffs have suffered, are now suffering, and will continue to suffer, emotional pain and mental anguish.

79. As a direct and proximate result of such actions, Plaintiffs have been, are being and will be in the future, deprived of income in the form of wages and of prospective benefits due to Plaintiffs solely because of Defendant's conduct.

## VII. PRAYER FOR RELIEF

80. Based on the foregoing, Plaintiffs pray for the following relief:

   A. That Plaintiffs be awarded damages in the amount of any wages, salary, employment benefits, or other compensation, including, but not limited to back pay and front pay, plus prejudgment interest;

   B. Compensatory damages;

   C. Punitive damages;

   D. Reasonable attorney's fees;

   E. The costs and expenses of this action;

   F. A tax offset to mitigate the tax burden of a lump sum award;

   G. Injunctive relief barring Defendant from undertaking such discriminatory practices against other employees, mandating workplace harassment prevention training, and taking other such injunctive action as the Court finds appropriate;

   H. Such other legal and equitable relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ *Curt Masker*
CURT M. MASKER, BPR No. 037594
THE MASKER FIRM
P.O. Box 60217
Nashville, TN 37206-0217
(615) 823-1737
curt@maskerfirm.com

*Counsel for Plaintiffs*