UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| KENNETH LAYTON and | ) |
| DAVID FOSTER, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:20-cv-00946 |
| | ) |
| SOUTHERLAND, INC., | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Kenneth Layton alleges mistreatment by Lauren Snowden, a Southerland, Inc. manager, based upon his gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Layton and his co-worker, David Foster, also claim they were subject to retaliation when they complained about Snowden's conduct. Southerland denies the allegations and has moved for summary judgment under Fed. R. Civ. Procedure 56(a). (Doc. Nos. 35, 58, and 59). For the following reasons, the motion will be denied and this case will proceed to trial.

### I. UNDISPUTED FACTS[1]

Southerland is a large mattress manufacturer that hired Layton and Foster as Quality and Safety Coordinators. They were supervised by Lauren Snowden, Southerland's Quality and Safety Manager.

Layton identifies two periods of alleged sexual harassment by Snowden. (Doc. No. 38-2; Layton Dep. at 128).

---

[1] The facts in this section are undisputed unless specifically noted otherwise and are drawn from the parties' statement of facts (Doc. No. 45), the exhibits, depositions, declarations submitted in connection with the summary judgment briefing, the Complaint, and the Answer. (Doc. No. 1).

Spring 2019

According to Layton, beginning around May 2019, Snowden touched Layton in a sexually inappropriate manner when speaking with him and while at work. He will testify at trial that, among other things, she would "brush her arm up against [his] back," rub his shoulders, "rub parts of her body up against [Layton's] if [they] were in a small area," touch his chest, "fake smack" him on the face, hold his knees with her hands wrapped around her, and rub or hold his hands or knees while looking at him. (Doc. No. 45 ¶¶ 37–49; Layton Dep. at 88, 89, 90, 91, 95, and 96). Also, Snowden made sexually inappropriate comments to him, such as "[y]ou're pretty built. I wish I was strong like a man like you but still with the physique of a woman," "[w]ow, you're really built for this," and if she were his girlfriend or mother, she would "spank" him. (Layton Dep. at 88, 104, and 154).

Snowden even made sexual overtures to Layton when she invited him to attend various social and professional functions with her, including luncheons, dinners, Halloween parties, and Nashville Sounds baseball games. (Id. at 88, 106, and 107). At some of these events, Snowden sometimes rubbed her body against Layton. (Id. at 88). She also asked Layton about his dating and personal life. (Id. at 91 and 108). Even though Layton told Snowden that her actions made him feel uncomfortable, he did not report Snowden to human resources. (Id. at 92)

Fall 2019

In October 2019, Snowden invited Layton to her office and asked him to switch work shifts, and, if he did, she would "get on her knees for him." (Doc. No. 45 ¶ 51; Layton Dep. at 159).

In December 2019, Layton was suspended for poor communications with staff and making unprofessional comments about another employee. (Layton Dep. at 173; see also id., Ex. 7, at 123–

24). When he returned to work, Snowden said to him, "I thought you broke up with me. Come back to mama." (Id., Ex. 14, at 128).

On January 22, 2020, Layton finally complained to Matt Roberts, Southerland's Director of Human Resources, about Snowden's behavior. Following the complaint, Roberts interviewed Layton and David Foster, who also believed that Snowden often made inappropriate sexual comments and "tends to be handsy when she talks to people." (Doc. Nos. 45 ¶ 18, Roberts Dep. at 89 and 90, Doc. No. 46-1, Ex. 9). Roberts made notes during each interview, wrote a post-interview memorandum, and obtained written statements from both Layton and Foster. (Doc. No. 46-1, Ex. 7, 9). Roberts also interviewed Snowden but failed to take notes or otherwise memorialize it, contrary to Southerland's policy. (Roberts Dep. at 118; Doc. No. 46-1 at Ex. 7, 8). Roberts admits that he did not follow Southerland's policy. (Id. at 120, 118, and 122).

<u>Southerland Terminates Layton and Foster</u>

On January 29, 2020, one week after Layton's complaint and while the investigation was still ongoing, Roberts told Snowden about an applicant for the same position held by Layton and Foster. (Doc. No. 46-2, Ex. 18). Snowden replied: "[m]an oh man . . . I wish I could replace David Foster or Ken Layton with this gem. [smiley face emoji]" (Id.). Roberts responded, "[f]or real . . . put [the applicant's] info in your future file so we'll have it for later. I'll keep a copy as well." (Id.). On February 26, 2020, Snowden and Roberts terminated Layton and Foster.

## II. LEGAL STANDARD

Summary judgment is appropriate only where "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Griffith v. Franklin Cty.</u>, 975 F.3d 554, 566 (6th Cir. 2020) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). In deciding a motion for summary

3

judgment, the Court reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

### III. ANALYSIS

#### A. Layton's Sexual Harassment Claim

Title VII prohibits a "workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999) ("Conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive."). To establish a prima facie hostile work environment claim based upon gender, an employee must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. Wyatt v. Nissan N. Am., Inc., 999 F.3d 400, 411 (6th Cir. 2021); see also Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2003). The parties dispute only the fourth element in this case.

"[W]hen analyzing whether a plaintiff [was subjected to] a hostile work environment," courts must examine the "totality of the circumstances." Williams v. GNC, 187 F.3d 553, 562 (6th Cir. 1999). This requires both an objective and subjective analysis. Nathan v. Great Lakes Water

4

Case 3:20-cv-00946   Document 61   Filed 07/27/22   Page 4 of 10 PageID #: 1385

Auth., 992 F.3d 557, 567–68 (6th Cir. 2021); see also Jordan v. City of Cleveland, 464 F.3d 584, 597 (6th Cir. 2006) (holding that a finding of whether plaintiff was subjected to a hostile work environment is "quintessentially a question of fact"). An objectively hostile work environment exists where a reasonable person would find the work environment hostile or abusive. Harris, 510 U.S. at 21. Courts consider several factors to determine whether a work environment is objectively hostile, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. Conduct is more likely to be objectively hostile where it is "continuous and not sporadic." Wyatt, 999 F.3d at 411. A work environment is subjectively hostile where the employee "perceive[s] the environment to be abusive." Id. at 411–12.

Snowden's conduct and comments easily survive summary judgment when the record is viewed in the light most favorable to Layton. Her actions were frequent and humiliating, satisfying both the objective and subjective standards. Indeed, there is ample admissible evidence from which a jury could conclude that Snowden may have engaged in offensive and inappropriate sexual behavior. A few examples of likely admissible evidence at trial suffice here:

- Snowden brushed her arm against Layton's back. (Doc. No. 45 ¶ 37);

- Snowden rubbed Layton's shoulders and back for up to 30 seconds at a time. (Id. ¶ 38);

- Snowden rubbed parts of her body against Layton. (Id. ¶ 39);

- Snowden told Layton, "You're pretty built. I wish I was strong like a man like you but still with the physique of woman," "[w]ow, you're really built for this," and if she were his girlfriend or mother, she would "spank" him. (Id. ¶¶ 40, 50; Layton Dep. at 88:2–4, 104:3–14, 154:12–14);

- Snowden touched Layton's chest. (Id. ¶ 44);

- Snowden "fake smack[ed]" Layton on the face. (Id. ¶ 45);

- Snowden stood in front of Layton, wrapped her hands around her, and held one of Layton's knees. (Id. ¶ 46);

- Snowden pried Layton for personal information. (Id. ¶ 48);

- Snowden alluded to giving Layton oral sex. (Id. ¶ 51).

These examples are more than enough to satisfy the objective test for a hostile work environment because "unwanted touching is one of the most offensive things that can occur in the workplace and should never be tolerated." Iyebote v. Meharry Medical Coll., No. 3:20-cv-00475, 2022 WL 508893, at *5 (M.D. Tenn. Feb. 18, 2022). Indeed, the Sixth Circuit has observed that uninvited physical touching "is more severe than harassing comments alone." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 334 (6th Cir. 2008); Wyatt, 999 F.3d at 411.

Southerland's argument that Snowden's conduct is neither objectively severe nor pervasive is unavailing. (Doc. No. 36 at 14–15). The alleged facts in the cases on which Southerland relies, including Hensman v. City of Riverview, 316 F. App'x 412 (6th Cir. 2009) and Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000) pale in comparison to those here. In Hensman, the Sixth Circuit concluded that a male supervisor's conduct – hugging plaintiff three times and touching her arm once – was not frequent enough to establish a hostile work environment. 316 F. App'x at 417. In Bowman, the Sixth Circuit concluded that a female supervisor's three instances of physically invasive conduct toward a male subordinate, including grabbing the plaintiff's buttocks and saying that "she controlled [plaintiff's] ass and she would do whatever she wanted with it," coupled with repeated and unwanted sexual advances, did not constitute severe or pervasive harassment. 220 F.3d at 458–59, 464. The Sixth Circuit has since recognized that Bowman likely "set[s] the outer limits on what conduct a reasonable person could not believe creates a hostile work environment." Nathan, 992 F.3d at 569. Snowden's conduct is beyond the

6

limit set in Bowman and far more frequent than the conduct in Hensman. Layton estimated that Snowden touched him three to four times a month over at least a six-month period. (Doc. No. ¶ 16). Simple math yields 18 to 24 instances of inappropriate touching.

Snowden also did more than touch Layton. She made lewd overtures and comments toward him and alluded to giving him oral sex. The Sixth Circuit has continually rejected summary judgment on the severe or pervasive element when a harasser not only physically touches an employee, but also makes graphic, uninvited sexual advances. See Williams, 187 F.3d at 559 (harasser told employee that she could "rub up" against him anytime; approached her from behind and said "Back up: just back up"; touched her neck; and suggested that she touched his genitals); Hawkins, 517 F.3d at 334 (finding that a harasser's crude requests for oral sex, solicitation of a sexual relationship, and invasion of physical space by rubbing, touching, and trying to "feel on" plaintiff was "sufficient to survive summary judgment on the issue of whether the harassment [plaintiff] experienced was severe or pervasive"). If credible, a reasonable juror could conclude that her comments, viewed alongside her alleged touching, is objectively offensive.

Southerland also argues that Snowden's conduct was not subjectively unreasonable because Layton "admitted that at the time he complained to Roberts, he did not even know if he was being harassed." (Doc. No. 36 at 14 (citing Layton Dep. at 136:4–10)). The Court disagrees. Having viewed the record in the light most favorable to Layton, the Court concludes there is a dispute of fact as to whether Layton perceived the harassment to be unreasonable. Layton told Snowden during one phone call after work hours that her flirtatiousness made him feel uncomfortable. (Layton Dep. at 92:4–15). Layton also told his mother that Snowden's conduct had increasingly been detrimental to his personal and professional life. (Id. at 162:12–19). From these facts, a reasonable juror could conclude that Layton found Snowden's conduct to be unwelcoming.

Accordingly, Southerland's motion for summary judgment on Layton's hostile work environment claim will be denied.

B. Layton's and Foster's Retaliation Claim

Title VII prohibits retaliation when an employee has opposed discriminatory employment practices. 42 U.S.C. § 2000e-3(a). Applying the McDonnell Douglas burden-shifting framework, the Court will deny summary judgment on the retaliation claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The record is clear that Layton and Foster engaged in protected activity. Layton complained to human resources about Snowden's behavior. (Doc. No. 58 at 19). Foster participated in Southerland's investigation into Snowden's behavior. (Id.). After doing so, they were terminated. Southerland only challenges whether there is sufficient evidence of a causal connection between their termination and their protected activities. (Id.).

A plaintiff's burden to show but-for causation "'is not onerous,'" and can be met through evidence "'that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'" George v. Youngstown State Univ., 966 F.3d 446, 460 (6th Cir. 2020) (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)); see also Jackson v. Genesee Cty. Rd. Comm'n, 999 F.3d 333, 349 (6th Cir. 2021) (holding that "[t]emporal proximity between the protected activity and the adverse employment action is an important category of circumstantial evidence"). Layton complained about Snowden's conduct on January 22, 2020, and Foster participated in Roberts' HR investigation that same day. (Doc. No. 45 ¶¶ 14, 18). Then, on February 26, 2020, Southerland terminated Layton and Foster – just over a month after they participated in the Snowden investigation. (Foster Dep. at 171:13–16, 172:25–173:8; Layton Dep. at 244:6–245:10). Southerland's Vice President of Operations and Rule 30(b)(6) witness Michael

Prude testified that Snowden and Roberts were the "primary decision makers" in dismissing Layton and Foster. (Prude Dep. at 133:16–25). The short temporal proximity, along with Snowden and Roberts' central involvement in both the investigation and termination, is "strong circumstantial evidence" of causation. See Jackson, 999 F.3d at 350 (finding a 2-month lapse of time along with employers' involvement in the adverse action to be "strong circumstantial evidence" that satisfies a but-for causation showing). A reasonable juror could conclude that Southerland would not have terminated them but for their involvement in the Snowden investigation. See George, 966 F.3d at 459–60; see also Wyatt, 999 F.3d at 421.

Southerland's "legitimate, non-retaliatory reason" for the terminations, Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007), is of Layton's and Foster's failure to inspect mattresses for the February 18, 2020 showcase event. (Doc. No. 45 ¶¶ 24, 27, 29).

However, there is a genuine dispute of fact regarding the sufficiency of Southerland's non-retaliatory reason to terminate Layton and Foster. Southerland changed its rationale for the terminations. Southerland first claimed their terminations were necessitated by a reduction of force during the COVID-19 pandemic and now relies upon Layton's and Foster's failure to inspect mattresses at the February 18, 2020 showcase event. (Compare Doc. No. 46-1 at 53 with Doc. No. 46-2 at 24; Prude Dep. at 85:23–86:10; 38-9 at 27:9–20). Indeed, "[A]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." Eades v. Brookdale Senior Living, Inc., 401 F. App'x 8, 12 (6th Cir. 2010).

Even if Southerland's rationale for the terminations were consistent, there is a genuine dispute as to whether it was the real reason. Layton and Foster question whether they were responsible for inspecting mattresses for the showcase event and contend that Snowden never informed them about their duties. (Doc. No. 45 ¶ 24). Snowden's email that she "wish[ed] [she]

9

could replace David Foster or Ken Layton with" another candidate, along with Roberts' reply, further suggests an alternative, illegal basis for termination. Because "there are two reasonable interpretations of the evidence, [the Court] must allow the jury to resolve the issue of whether the evidence [Layton and Foster] cites is sufficient evidence to conclude that [Southerland] retaliated against [them] for opposing an unlawful employment practice." Jackson, 999 F.3d at 351 (citing Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 649 (6th Cir. 2015)).

Accordingly, the Court will deny summary judgment as to Layton's and Foster's retaliation claim under the Title VII.

## IV. CONCLUSION

For the reasons outlined above, Southerland's Motion for Summary Judgment (Doc. No. 35) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE